UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL & TRANSPORTATION WORKERS, TRANSPORTATION DIVISION,<br><br>Petitioner,<br><br>v.<br><br>RAPID CITY, PIERRE & EASTERN RAILROAD,<br><br>Defendant. | Civil No. 24-2047 (JRT/SGE)<br><br>MEMORANDUM OPINION AND ORDER STAYING CASE |

---

Cortney S. LeNeave and Thomas W. Fuller, **HUNEGS, LENEAVE & KVAS, PA**, 1000 Twelve Oaks Center Drive, Suite 101, Wayzata, MN 55391; Isabel Johnson, **HUNEGS, LENEAVE & KVAS, PA**, 6608 Dakota Trail, Minneapolis, MN 55439; and Shawn M. McKinley, **SMART-TRANSPORTATION DIVISION**, 6060 Rockside Woods Boulevard North, Suite 345, Independence, OH 44131, for Petitioner.

Allison N. Krueger, **ARTHUR CHAPMAN LAW FIRM**, 81 South Ninth Street, Suite 500, Minneapolis, MN 55402; and Conor P. Neusel, **THOMPSON COBURN LLP**, One US Bank Plaza, St. Louis, MO 63101, for Defendant.

Petitioner Sheet Metal Air Rail and Transportation Worker – Transportation Division ("SMART-TD") initiated this action seeking to enforce two arbitration awards for union members Shane Kirby and Cody Grace. After their termination by the Rapid City, Pierre & Eastern Railroad (the "Railroad"), the employees filed grievances, and the National Railroad Adjustment Board, First Division ("NRAB") reinstated them, with backpay. SMART-TD now petitions the Court to enforce the award. But the award is

ambiguous, and the Railway Labor Act gives exclusive jurisdiction to the NRAB to clarify its own awards, so the Court will stay the case pending clarification from the arbitration board.

## BACKGROUND

Both Kirby and Grace were terminated by the Railroad, guided through the grievance process by SMART-TD, and ultimately reinstated with backpay by the NRAB. (Pet. ¶¶ 7–10, 14–17, May 30, 2024, Docket No. 1.)

More specifically, the Railroad dismissed Kirby for insubordination and quarrelsome and discourteous conduct. (Pet. ¶ 6, Ex. A ("Kirby Award") at 2–3.) In short, Kirby allegedly disobeyed orders from his trainmaster and accused the trainmaster of being responsible for another employee's termination. (*Id.*) SMART-TD, on behalf of Kirby, asked the NRAB to reinstate him with backpay. (*Id.* at 1.) Seventeen months following his dismissal, the NRAB ordered Kirby reinstated but limited the back pay award to "pay for time lost after the first twelve-month period of his dismissal." (*Id.* at 4.) The NRAB came to this compromise because a "wage loss of one year should be adequate, in our view, to teach [Kirby] of the need to respect his supervisors and to control his emotions in interacting with them." (*Id.*)

The Railroad terminated Grace for allegedly failing to restore a mainline crossover switch for mainline movement, creating a particularly perilous situation that involved a near-crash with standing cars. (Pet. ¶ 13, Ex. B ("Grace Award") at 2.) Upon review, the NRAB overturned Grace's termination on a technicality: the Railroad failed to properly

record its initial investigation, so when the Railroad reconvened the investigation and issued a decision, it had acted outside the mandatory 30-day window contemplated by the collective bargaining agreement. (*Id.* at 2–3.) The NRAB therefore sustained the claim for Grace to be reinstated and "compensated for all wage loss . . . for being discharged from active service." (*Id.* at 1, 4.)

Kirby and Grace were both returned to work but have yet to receive any backpay. (Pet. ¶¶ 11, 18.) Backpay remains pending because the parties dispute whether the amount of backpay must be offset with other wages earned during their respective terminations.

Seeking clarification, the Railroad filed Requests for Interpretation with the NRAB about what the NRAB meant by "pay for time loss" and "all wage loss" in the awards. (Exhibit Index at 1, Ex. A ("Decl. of Ryan Englebright") ¶ 10, Exs. 6, 7, July 30, 2024, Docket No. 14.) The NRAB acknowledged receipt of those requests on July 22, 2024, but to the Court's knowledge has not yet issued a clarification. (Decl. of Ryan Englebright ¶ 11.) Meanwhile, SMART-TD filed this petition directly in federal court to enforce the award, which SMART-TD claims unambiguously awarded the employees full wages without offset. (*See* Pet. ¶¶ 1–2.) The Railroad moved to dismiss the petition for lack of jurisdiction or, alternatively, to stay the petition until the NRAB clarified the award. (Mot. Dismiss, July 30, 2024, Docket No. 10.)

## DISCUSSION

**I.   STANDARD OF REVIEW**

A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction and requires the Court to examine whether it has authority to decide the claims. *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1063 (D. Minn. 2013). The party seeking to invoke a federal court's subject matter jurisdiction bears the burden of showing that the Court has jurisdiction. *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011). The Court must dismiss an action if it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

In deciding a Rule 12(b)(1) motion, the Court must distinguish between a "facial attack" and a "factual attack." *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015). In deciding a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* (citations omitted). The Court also accepts as true all facts alleged in the Complaint, construing all reasonable inferences in the plaintiff's favor. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). In contrast, "[i]n a factual attack, the court considers matters outside the pleadings" and the non-moving party does not enjoy the benefit of the allegations in its pleadings being accepted as true. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted). "The general rule is that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (citations and internal quotation marks omitted).

-4-

Here, the Railroad advances a factual attack. (Def.'s Mem. Supp. Mot. to Dismiss at 6–7, July 30, 2024, Docket No. 12.) The Court can therefore consider some matters outside the pleadings, including affidavits and other documents, to resolve the issues.

## II.   ANALYSIS

The only question the Court must resolve is whether the NRAB award is unambiguous and thus must be enforced against the Railroad or whether it is ambiguous and thus requires clarification from the NRAB. Because the Court finds the award in need of clarification, it will stay the case while the NRAB clarifies its award.

To help resolve labor disputes between railway workers and railroads, Congress passed the Railway Labor Act ("RLA"). *See* 45 U.S.C. § 151 §§ 151–88; *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) ("Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes."). Courts categorize disputes under the RLA as either "major" or "minor" disputes. *Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945), *adhered to on reh'g*, 327 U.S. 661, 662 (1946). Major disputes involve disagreements over changes in collective bargaining agreements involving rates of pay, rules, or working conditions. *Consol. Rail Corp. v. Ry. Lab. Execs.' Ass'n*, 491 U.S. 299, 303 (1989). Minor disputes, on the other hand, relate to the meaning and application of collective bargaining agreements to specific grievances. *Id.* The National Railroad Adjustment Board ("NRAB") has exclusive jurisdiction over minor disputes between an employee and a railroad carrier. 45 U.S.C. § 153 First (i); *Pittari v. Am. Eagle Airlines, Inc.*,

468 F.3d 1056, 1060 (8th Cir. 2006) (conferring jurisdiction on the courts "only if the issues do not require the court to construe the collective bargaining agreement").

Once the NRAB issues an award, it must state the terms of that award in writing. 45 U.S.C. § 153 First (m). If the carrier fails to comply with that award, the employee may petition a federal court to enforce that award. *Id.* § 153 First (p). However, if "a dispute arises involving an interpretation of the award, the division of the board upon request of either party shall interpret the award in light of the dispute." *Id.* § 153 First (m). That dispute must be genuine, and "ambiguities manufactured by a party seeking to use them to invalidate an award are not a ground for a court's refusal to enforce an award." *Bhd. of R.R. Signalmen v. BNSF Ry. Co.*, No. 4:20-1209, 2021 WL 4305735, at *4 (E.D. Mo. Sept. 22, 2021).

Here, both the Kirby and Grace awards mandated backpay, but the awards were silent on the issue of offsets.

SMART-TD argues that silence as to any offsets still allows the Court to enforce the award according to its terms. It is true that some circuits (not including the Eighth) have held that silence in arbitration backpay awards unambiguously means no offsets were intended.[1] But these cases did not involve the RLA or the NRAB, which has an explicit and

---

[1] *See Auto. Mechs. Loc. 701, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Joe Mitchell Buick, Inc.*, 930 F.2d 576, 578 (7th Cir. 1991) ("It is settled that arbitrators have discretion to decide whether lost earnings should be offset by interim earnings or a failure to mitigate, so that their silence on such issues means that no such offsets are to be made."); *Int'l Union of Operating Eng'rs, Loc. 841 v. Murphy Co.*, 82 F.3d 185, 189 (7th Cir. 1996); *Brown v. Witco Corp.*,

-6-

mandatory remedy for clarifying awards.  *See* 45 U.S.C. § 153 First (m).  The Court is aware of only one district court that has held that an NRAB award of backpay that is silent on offsets unambiguously means no offsets are required.  *See United Transp. Union v. Union R. Co.*, No. 13-1535, 2014 WL 1612670, at *5 (W.D. Pa. Apr. 22, 2014) (enforcing an award of "pay for time lost" as unambiguously requiring backpay without offsets); *but see Ord. of R. R. Conductors & Brakemen v. Erie Lackawanna R. Co.*, 302 F. Supp. 1196, 1197, 1200 (N.D. Ohio 1969) (remanding back to the NRAB for clarification on offsets when it awarded reinstatement "with payment for time lost").

The Eighth Circuit has not spoken on the precise issue of offsetting backpay, but it recently ruled on a similar issue in *Int'l Ass'n of Sheet Metal, Air, Rail, & Transp. Workers, Transp. Div. v. Kansas City S. Ry. Co.* ("*SMART-TD v. KCSR*"), No. 23-3332, 2025 WL 86532 (8th Cir. Jan. 14, 2025).  There, the NRAB sustained a claim for "pay for all time lost, including time spent at the investigation, without any deduction for outside earnings, . . . and with full benefits restored."  *Id.* at *1.  As in this case, the railway asked the NRAB for clarification on whether backpay could be offset and whether the employee was entitled to paid vacation; SMART-TD then petitioned a federal court to enforce the award as written, claiming that the award was unambiguous.  *Id.* at *1–2.  The district court enforced the award without offsets and with full vacation benefits.  *Id.* at *2.  The railway

---

340 F.3d 209, 216 (5th Cir. 2003); *Int'l Chem. Workers v. Columbian Chems., Co.*, 331 F.3d 491, 498 (5th Cir. 2003).

appealed to the Eighth Circuit, and while the case was pending, the NRAB issued a clarification on backpay, finding that it could not be offset with outside earnings, which mooted that issue before the Eighth Circuit. *Id.* But the NRAB had not yet determined the issue of paid vacation. *Id.* So the Eighth Circuit held that, as relates to the vacation benefits, "the Award is ambiguous because each party offers a reasonable interpretation of the Award" and therefore the district court lacked jurisdiction to enforce the award. *Id.* at *2–4.

The Court draws two lessons from *SMART-TD v. KCSR*. First, when the NRAB wants to make it clear that a backpay award does not include offsets, it can do so. *See id.* at *1 (analyzing an NRAB award of "pay for all time lost, including time spent at the investigation, without any deduction for outside earnings"). Second, in close cases in which both parties offer reasonable interpretations of an award, the Eighth Circuit urges district courts to err on the side of remand to the NRAB. *Id.* at *3 ("Balancing the tension of the district court's power to enforce RLA awards and the [NRAB's] power to interpret those awards, federal courts should generally remand an ambiguous award for clarification.").

Overall, both the RLA's clear textual command that when "a dispute arises involving an interpretation of the award, the division of the board upon request of either party shall interpret the award in light of the dispute," 42 U.S.C. § 153 First (m), and *SMART-TD v. KCSR*'s general tilt toward remand when both parties offer reasonable

interpretations urge the Court to err on the side of allowing the NRAB to exercise its statutory authority to have the final word on this award.

## CONCLUSION

Federal courts are courts of limited jurisdiction. The Railway Labor Act gives exclusive jurisdiction to the National Railroad Adjustment Board to clarify reasonable disputes about the interpretation of its own awards. Because parties have a reasonable dispute over the language of the backpay awards, the Court currently lacks jurisdiction to hear this case. However, following the issuance of a NRAB clarification, the Court would have jurisdiction to enforce the clarified award. Accordingly, the Court will stay the action and order the Railroad to notify the Court when the NRAB issues its clarification.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss for Lack of Jurisdiction or Alternatively to Stay [Docket No. 10] is **GRANTED** in part.

2. This action is **STAYED** pending clarification of the arbitration board.

3. Defendant must notify the Court of the contents of the NRAB clarification within 14 days of its issuance.

DATED: February 4, 2025
at Minneapolis, Minnesota.

*John N. Tunheim*
JOHN R. TUNHEIM
United States District Judge